UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| CALVIN-OTIS TANKESLY, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.   1:23-CV-090-TAV-SKL |
| | ) | |
| TENNESSEE DEPARTMENT OF | ) | |
| CORRECTION, LISA HELTON, LEE | ) | |
| DOTSON, KENNETH WILLIAMS, | ) | |
| BRETT COBBLE, KATLIN | ) | |
| CAMPBELL, JAMES HOLLOWAY, | ) | |
| DANIELLE MASONCUPP, | ) | |
| CENTURION OF TENNESSEE, LLC, | ) | |
| STEPHEN WHEELER, EMMA RICH, | ) | |
| EDWARD MEYDRECH, ARAMARK | ) | |
| CORRECTIONAL SERVICES, LLC, | ) | |
| WILLIAM SARRELL, MAGAN | ) | |
| MAJORS, JASON E. MUMPOWER, | ) | |
| SGT. JOHNSON, and WENDY | ) | |
| HENSLEY, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, a Tennessee Department of Correction ("TDOC") prisoner housed in the

DeBerry Special Needs Facility ("DSNF"), has filed this pro se action for violation of 42

U.S.C. § 1983.  Now before the Court are Plaintiff's (1) motion for injunctive relief [Doc.

3], in support of which he filed a memorandum [Doc. 4] and an addendum [Doc. 6], and

(2) amended complaint [Doc. 11].  The Court will screen Plaintiff's amended complaint

before addressing his motion.

# I.    AMENDED COMPLAINT SCREENING

## A.    Standard

Under the Prison Litigation Reform Act ("PLRA"), district courts must screen prisoner complaints and shall, at any time, *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune.  *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999).  The dismissal standard the Supreme Court set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure to state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010).  Thus, to survive a PLRA initial review, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Formulaic and conclusory recitations of the elements of a claim do not state a plausible claim for relief.  *Id.* at 681.  Likewise, an allegation that does not raise a plaintiff's right to relief "above a speculative level" fails to state a plausible claim. *Twombly*, 550 U.S. at 570.  However, courts liberally construe pro se pleadings and hold them to a less stringent standard than lawyer-drafted pleadings.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

A claim for violation of 42 U.S.C. § 1983 requires a plaintiff to establish that a person acting under color of state law deprived him a federal right.  42 U.S.C. § 1983.

## B. Amended Complaint Allegations

Plaintiff seeks monetary damages and "preliminary and permanent declaratory and injunctive relief" due to "violation of his Constitutional rights secured by the First, Eighth, and Fourteenth Amendments," as well as violation of his rights under the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, Title VII of the Civil Rights Act of 1964, and 42 U.S.C. § 1981 [Doc. 11, pp. 1–2].

Plaintiff specifically states that he seeks relief for violations of his constitutional right to a "medically prescribed diet authorized by medical professionals" against (1) Aramark Correctional Services and its employees, (2) Centurion of Tennessee, LLC, and its employees, (3) the TDOC and its employees, and (4) all individual Defendants in their official and individual capacities [*Id.* at 2]. Plaintiff asserts that these violations amounted to "unnecessary and wanton[] infliction of pain with deliberate indifference" [*Id.*].

Plaintiff was a resident in the Bledsoe County Correctional Complex ("BCCX") at all times relevant to his amended complaint [*Id.* at 3]. Plaintiff alleges that Centurion contracted with the State to provide medical, dental and psychological care to TDOC prisoners and Aramark contracted with the State to provide food service to TDOC inmates [*Id.* at 5–6].

Plaintiff states that TDOC Commissioner Lisa Helton, TDOC Assistant Commissioner Lee Dotson, and Associate Warden of Treatment Brett Cobble subjected him to "retaliatory facility transfers" that followed his federal filings and thereby "punish[ed] [Plaintiff] for exercising protected conduct in violation of" his First and

3

Fourteenth Amendment rights [*Id.* at 7]. Plaintiff also indicates that these Defendants "[r]efus[ed] to address private contractors['] 'breach of contract' in the assignment of liaisons to oversee contract compliance." Plaintiff further states that while BCCX used to have two liaisons, it has not had any individuals in this position since those individuals resigned or were reassigned [*Id.*]. Plaintiff claims that these events violate his Eighth Amendment right to be free of cruel and unusual punishment and caused him to suffer "harassment [and] intimidation" in addition to the "retaliatory facility transfers" [*Id.* at 7–8]. Plaintiff also states that these Defendants acquiesced to "federal rights violations documented in [] grievances, federal filings[,] and repeated retaliatory transfers, all of which must pass over their desks," and that this establishes a custom of constitutional violations [*Id.*]. Plaintiff additionally claims that he should not have to fight for basic nutrition at every meal or file lawsuits about the same constitutional violations before also referring to being "forced to purchase medical necessities that Centurion is responsible for providing, while earning [] [seventeen cents] an hour as a chronic care/medical incentive inmate" [*Id.* at 8].

Plaintiff further alleges that on June 1, 2021, Aramark and Aramark employee William Sarrell failed to provide him his medical diet during an eight-day quarantine [*Id.* at 8]. Plaintiff also claims that Dr. Emma Rich, BCCX's chief physician, and Centurion employee, discontinued his medical diet because Plaintiff's physician at other TDOC facilities "did not have the authority to write this diet," thereby "forcing Plaintiff to accept a general population meal which Plaintiff was unable to consume" [*Id.* at 9]. Plaintiff then claims that on June 10, 2021, after he was moved to "Site II," Centurion,

4

Aramark, and Dr. Rich forced Plaintiff to go without nutrition for 68 days by discontinuing an "eat in cell" directive, after which Plaintiff had to either (1) eat in front of other inmates and risk having to defend himself due to exposing other inmates to his regurgitation of food due to medical issues or (2) go without food [*Id.* at 9].

Plaintiff states that "at all times relevant to this claim," Centurion and Dr. Rich refused to (1) provide Plaintiff relief from pain due to swelling in his right neck and shoulder, (2) treat Plaintiff's breathing difficulties or heart palpitations, and (3) treat Plaintiff's swallowing difficulties due to his diverticular pocket, which Plaintiff claims amounts to deliberate indifference [*Id.* at 9–10]. Plaintiff further states a doctor tried to assist Plaintiff with unspecified issues, but Dr. Rich would override Dr. Samuels's medical decisions, which Plaintiff claims caused him to suffer from his dental conditions "via the '[c]at['s][ ]paw [t]heory" [*Id.* at 10]. Plaintiff additionally claims that Centurion, TDOC Medical Director Kenneth Williams, Health Administrator Katlin Campbell and Cobble conspired together to (1) charge inmates for various "medical necessities" available in the commissary to save costs and (2) have medical personnel check inmates' trust account balance to determine who could purchase those items, in violation of Centurion's contract [*Id.*].

Plaintiff also claims that Edward Meydrech, BCCX dentist, and employee of Centurion, denied him dental and/or oral care for 18 months, specifically stating that Meydrech put him on a list for extraction when 3 of his teeth broke, even though one of those teeth broke in a way that exposed a nerve and Meydrech knew that Plaintiff did not have teeth on the opposite side of his mouth [*Id.* at 10–11]. Also, when this Defendant

5

extracted one of Plaintiff's upper teeth on March 7, 2023, he told Plaintiff to return in a month for extraction of a tooth on the lower jaw, but that extraction had not occurred when Plaintiff filed his amended complaint in August 2023, even though "[n]one of Plaintiff's ten teeth align to allow foods to be chewed," and Meydrech was aware of Plaintiff's dental injuries [*Id.* at 11].

Next, Plaintiff asserts that from June 2021 to February 2023, Aramark, Sarrell, and Aramark employee Magan Majors refused to comply with his medical diet and "instructed untrained inmate workers to serve Plaintiff a standard diet with meats, sauces[,] and food items prohibited on his authorized diet" that provided him with foods he can chew with less than 12 teeth and swallow without suffering [*Id.* at 11–12]. Plaintiff also states that on August 19, 2022, Centurion and Aramark's dietitians approved a medical diet for him, but Serrell and Majors stated that they "do not order hard eggs or spaghetti and . . . do not provide egg salad," which Plaintiff categorizes as a "refus[al] to provide the medical diet" [*Id.* at 12]. However, Plaintiff also states that these Defendants "instructed diet workers to prepare Plaintiff's diet by the [l]etter of the diet" by serving him spaghetti noodles undercooked and without cheese or sauce for dinner, but this "abandon[ed] the [s]pirit of the diet," and they still have not served Plaintiff egg salad despite the order from the dietitian. Plaintiff additionally claims that two Aramark evening shift cooks admitted to him that they do not know how to cook spaghetti or make egg salad [*Id.*]. But spaghetti, hard boiled eggs, and egg salad are the only foods Plaintiff can consume without pain [*Id.* at n.21]. Thus, Plaintiff claims that a

6

custom or policy of Aramark of failing to train its employees caused him to be "without nutrition for" 55 days in violation of the ADA [*Id.*].

Plaintiff next claims that a radiologist in Nashville told him that Ensure was entering his windpipe and increasing his risk for pneumonia but Centurion refuses to order the "Two Cal" drink Dr. Samuels and Centurion dietitians prescribed for him due to its cost [*Id.* at n.22]. He then claims that BCCX Unit Manager Wendy Hensley and BCCX Sergeant ("Sgt.") Johnson threw away his word processor's "power supply," two ink jet cartridges, and other property due to their frustration with Plaintiff's "extensive collection of legal documents" [*Id.* at 12–13].

Plaintiff also states that Hensley "further[ed] her retaliatory conduct" by assigning him to a cell with an inmate who smoked "'Deuce,'" which is a synthetic drug that increases his risk for cancer due to second-hand smoke, even though Plaintiff's prior cell had an open bed and a cellmate who did not smoke "'Deuce'" [*Id.* at 13]. Plaintiff further claims that Hensley refused Plaintiff's request to be moved back to his old cell even though she knew that Plaintiff was "fighting the return of cancer." Hensley subsequently transferred Plaintiff to a different cell with other inmates who also smoked this substance. Plaintiff then "demanded a cell change," and Hensley responded by saying that it did not matter where she put him, as all the inmates smoked this substance [*Id.*]. Plaintiff threatened to have his family call the Tennessee Bureau of Investigation about this, at which point Hensley moved Plaintiff to a unit with problem inmates who also smoked "'Deuce'" [*Id.* at 13–14].

7

Next, Plaintiff states that when he was transferred to DNSF, DNSF Warden James Holloway and DNSF Unit Manager Danielle Masoncup confiscated his legal property and "basic hygiene products" and put him in a 6-by-10-foot cell with a toilet where he eats and sleeps without being able to use soap [*Id.* at 14]. These Defendants also confiscated Plaintiff's Bible, but allowed Muslim inmates to access prayer rugs or the Koran and Jewish inmates to access a yarmulke, which Plaintiff states violated his First Amendment rights [*Id.*].

Plaintiff additionally claims that Williams and Campbell have failed to monitor and/or intervene and address the denials of medical and dental care to him by Centurion, Dr. Rich, and Meydrech [*Id.* at 14–15].

Plaintiff next claims that Tennessee Comptroller of Treasury Jason Mumpower failed to monitor breaches of contract by private contractors and this led to violations of Plaintiff's constitutional rights, including failure to provide him with his medical diet resulting in denial of nutrition and failure to provide medical treatment for Plaintiff's spine and collarbones [*Id.* at 15–16]. He also claims that Aramark and Centurion continue providing him foods that he cannot eat and are not part of his medical diet [*Id.* at 16].

Plaintiff further claims that he has repeatedly contacted Centurion Chief Executive Officer ("CEO") Stephen Wheeler regarding Centurion employees violating Plaintiff's constitutional rights but Wheeler has not intervened, and Campbell, Williams, Wheeler, and Mumpower "are all authorized decisionmakers regarding [] Centurion and Aramark" but they have "collectively refused to perform their official duties resulting in Plaintiff

8

suffering" [*Id.* at 16]. Plaintiff also claims that Wheeler made a directive under which medical personnel cannot refer Plaintiff or other inmates to the dentist or for eye care, even though there is only one dentist for 3,000 or more inmates [*Id.*].

Plaintiff further claims that he has a growth in his right neck that pinches a nerve, cuts off the blood supply to a muscle in his right shoulder, and now affects his eye [*Id.*]. Plaintiff states that he has had "multiple trips to [DNSF], [] [and] several x-rays and scans of this area" but cannot go to an optometrist for this issue due to Wheeler's directive [*Id.*].

Next, Plaintiff claims that while he was housed in a different TDOC facility on an unspecified date, he was diagnosed with stage four throat cancer, and cancer treatments left him with injuries to his teeth, gums, sinuses, neck, and throat that limit the foods he can eat [*Id.* at 17]. According to Plaintiff, after Aramark contracted to provide food service in TDOC prisons in September 2016, four TDOC facilities failed to provide Plaintiff his medically prescribed diet, which diminished his health and amounts to a custom or policy and a continuing violation [*Id.*]. He also claims that he was subjected to repeated retaliatory transfers, which Helton "and unnamed TDOC Commissioners" permitted, and Helton, Dotson, Williams, and Wheeler meet two of the four requirements for municipal liability in *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013), namely "(2) that an official with final decision-making authority ratified legal action and (4) the existence of a custom or tolerance or acquiescence [to] federal rights violations" [*Id.* at 17–18]. According to Plaintiff, "subcontracting" does not allow the TDOC, Centurion,

9

and Aramark to "circumvent" their liability for failing to ensure humane treatment of him [*Id.*].

As relief, Plaintiff seeks compensatory, monetary, and nominal damages and "declaratory and injunctive relief" [*Id.* at 18–20].

### C. Relevant Procedural Background

On August 8, 2023, the Court entered an order noting, among other things, that many of the claims in Plaintiff's original complaint appeared to be misjoined in this action under Rule 20(a) of the Federal Rules of Civil Procedure [Doc. 8, pp. 4–5]. The Court allowed Plaintiff to file an amended complaint but notified Plaintiff that if he included misjoined claims in that amended complaint, the Court would "presume that Plaintiff intends to proceed as to his first listed claim and those claims that are properly joined with that first claim, and the Court will summarily [dismiss] any misjoined claims without prejudice" [*Id.* at 6].

The first and most prominent claim in Plaintiff's amended complaint relates to denial of his medical diet [Doc. 11, p. 2]. Thus, the Court considers Plaintiff's claims regarding denial of a medical diet as the claims with which he intends to proceed in this action, and the Court will summarily dismiss Plaintiff's claims that are misjoined to the medical diet claims without prejudice.

### D. Analysis

#### 1. TDOC and State Official Capacity Employee Claims

As set forth above, Plaintiff has sued TDOC, a number of TDOC employees, and Mumpower and indicates that he has sued all individual Defendants in their official and

individual capacities [Doc. 11, pp. 2–7]. The Court treats Plaintiff's claims against individual Defendants in their official capacities as claims against their employers. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (holding "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"); *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690 n.5 (1978) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.").

Because the TDOC is an arm of the State of Tennessee, suit against the TDOC (or its employee in his official capacity) is suit against the State. *See Hix v. Tenn. Dep't of Corr.*, 196 F. App'x 350, 355 (6th Cir. 2006) (holding the TDOC is equivalent to the "State"). However, "a State is not a person within the meaning of § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989); *Hix*, 196 F. App'x at 355 (holding the TDOC is not a "person" within meaning of § 1983). Additionally, the Eleventh Amendment prohibits suits against a state or its agencies in federal court for damages, unless Congress has abrogated its immunity, or the state has expressly waived it. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99–101 (1984); *Quern v. Jordan*, 440 U.S. 332, 345 (1979). Tennessee has not waived its immunity to suit under § 1983. *Berndt v. Tennessee*, 796 F.2d 879, 881 (6th Cir. 1986).

Accordingly, Plaintiff's claims against the TDOC, and his official capacity claims against TDOC employees and Mumpower are **DISMISSED**.

### 2. Centurion and Aramark and Official Capacity Employee Claims

Plaintiff has also sued private entities Aramark and Centurion and their employees in their individual and official capacities [Doc. 11]. Where private entities such as Aramark and Centurion contract with the state to perform a traditional state function (like providing medical care or food services at a prison), the private entity acts under color of state law and may be sued under § 1983. *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). However, a private entity cannot be subject to § 1983 liability merely because it has employed someone who violated a prisoner's constitutional rights based "on a *respondeat superior* theory." *Monell*, 436 U.S. at 691.

Rather, to demonstrate that that a private corporation is liable for a violation of his constitutional rights, Plaintiff must identify a policy or custom of the company and show that he incurred an injury due to the execution of that policy. *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993); *see also Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011) (holding plaintiff must allege "a policy or well-settled custom of the company was the 'moving force' behind the alleged deprivation" of his rights). A policy or custom may be established by demonstrating: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision-making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations. *Burgess*, 735 F.3d at 478.

Inadequate training may serve as the basis for § 1983 liability only where a failure to train reflects a "deliberate" or "conscious" choice. *City of Canton v. Harris*, 489 U.S.

12

378, 389 (1989).  Explaining the "deliberate indifference" that is necessary to support a claim of failure to train, the Supreme Court has stated:

> [I]t may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury.

*Id.* at 390 (footnote omitted).  A plaintiff must identify a particular deficiency in the training program and prove that the identified deficiency was the actual cause of his constitutional injury.  *Id*. at 390–91.  It is not enough to establish that a particular officer, even the defendant in question, was inadequately trained, or that there was negligent administration of an otherwise adequate program, or that the conduct resulting in injury could have been avoided by more or better training.  *Id*.; *see also Carey v. Helton*, 70 F. App'x 291, 294 (6th Cir. 2003).

The Court will examine Plaintiff's claims against Centurion and Aramark and their employees in their official capacities under this framework.

### 3.    Medical Diet Claims

As set forth above, Plaintiff's amended complaint mainly focuses on claims related to denial of his medical diet during his BCCX incarceration.   Specifically, Plaintiff first alleges that in June 2021: (1) Aramark and Sarrell denied him his medical diet for eight days while he was in quarantine, (2) Dr. Rich discontinued his medical diet,

and (3) Centurion, Aramark, and Dr. Rich discontinued his "eat in cell" directive for 68 days [Doc. 11, pp. 8–9].

Plaintiff further alleges that from June 2021 through February 2023, Aramark, Sarrell, Majors, and Dr. Rich failed to provide him with his prescribed diet [*Id.* at 11–12]. On August 19, 2022, registered dietitians working for Aramark and Centurion approved a medical diet for him that allowed him hard boiled eggs, spaghetti noodles, and egg salad, but Sarrell and Majors did not provide this diet for 55 days, although at some point they instructed inmate workers "to prepare Plaintiff's diet by the [l]etter of the diet" in a manner that abandoned the "[s]pirit of the diet" [*Id.* at 12]. Specifically, Plaintiff states that he was served undercooked spaghetti noodles with no sauce or cheese for dinner and still has not received egg salad [*Id.*].

Additionally, Plaintiff states that his throat cancer treatments caused him injuries to his teeth, gums, sinuses, neck, and throat that "limit[] what foods Plaintiff [can] consume without hurting," but since 2016, Aramark has "refused to provide Plaintiff" his medically prescribed diet at four TDOC facilities, which Plaintiff states amounts to "a custom, policy[,] or practice" that supports application of the continuing violation theory [*Id.* at 17].

### a.    June 2021 Incidents[1]

---

[1] It appears likely that these claims are time-barred. *Harris v. United States*, 422 F.3d 322, 331 (6th Cir. 2005) (noting that federal district courts apply a state's statute of limitations to § 1983 claims); Tenn. Code Ann. § 28-3-104(a)(1)(B) (setting forth a one-year statute of limitations for § 1983 claims). And contrary to Plaintiff's implied assertion that the continuing violation doctrine applies to these claims, it is apparent that the claims arise from discretely actionable events that do not fall under the continuing violation doctrine. *Nat'l Parks*

14

###### i.    Quarantine

Plaintiff alleges that during an eight-day quarantine, Aramark and Sarrell did not provide him with his medical diet [Doc. 11, p. 8].[2]  Plaintiff's allegation that Sarrell failed to provide him with his diet during this quarantine will proceed at this time. However, Plaintiff provides no facts from which the Court can plausibly infer that the failure to provide him with this diet was due to a custom or policy of Aramark [*Id.*].  As such, this allegation fails to state a claim upon which relief may be granted under § 1983 as to Aramark, and this claim against Aramark is therefore **DISMISSED**.

###### ii.    Cancellation of Prescribed Diet and Eat In Cell Directive

As set forth above, Plaintiff also alleges that Dr. Rich cancelled his medical diet because Dr. Rich stated that the physician who wrote the diet did not have the authority to do so, and that Aramark, Centurion, and Dr. Rich cancelled the directive that allowed Plaintiff to eat in his cell [Doc. 11, p. 9].  These claims will proceed against Dr. Rich. However, while Plaintiff also attempts to hold Aramark and Centurion liable under § 1983 for both of these claims, he again provides no facts from which the Court can plausibly infer that either of these events resulted from a custom or policy of Centurion or Aramark [*Id.*].  As such, these allegations fail to state a claim upon which relief may be

---

*Conservation Ass'n, Inc. v. Tenn. Valley Auth.*, 480 F.3d 410, 416 (6th Cir. 2007).  But the Court will not dismiss these claims as untimely at this time.

[2] Plaintiff also alleges that Dr. Rich denied him his medical diet [*Id.*].  But as Plaintiff sets forth a separate claim arising out of this allegation [*Id.* at 9], the Court addresses it separately.

granted under § 1983 as to Aramark and Centurion, and these claims against Aramark and Centurion are therefore **DISMISSED**.

### b.    2022 Incidents

As to the 2022 incidents, Plaintiff has adequately alleged that Sarrell and Majors failed to provide him with a prescribed diet for 55 days, this claim will proceed herein against these Defendants as a violation of Plaintiff's rights under the Eighth Amendment. *Byrd v. Wilson*, 701 F.2d 592, 593–95 (6th Cir. 1983).

On the other hand, Plaintiff's allegation that these Defendants ultimately complied with the letter but not the spirit of this diet does not allow the Court to plausibly infer a violation of his constitutional rights.  Specifically, Plaintiff appears to allege that these Defendants eventually provided him with eggs and spaghetti in compliance with the prescribed diet but did not provide him with any sauces for his spaghetti, served him undercooked spaghetti, and did not provide him egg salad.  But Plaintiff provides no facts from which the Court can plausibly infer that this "by the letter" compliance with his prescribed diet amounted to a violation of his constitutional rights.  *Cunningham v. Jones*, 567 F.2d 653, 659–60 (6th Cir. 1977) (providing that where a prisoner's diet is sufficient to sustain the prisoner's good health, no constitutional right has been violated). Accordingly, this claim is **DISMISSED.**

Also, while Plaintiff attempts to hold Aramark liable for Sarrell and Majors's failure to provide him with this diet based on his allegation that two evening shift Aramark workers told him that they do not know how to cook spaghetti or make egg salad, this allegation does not allow the Court to plausibly infer that Aramark's alleged

16

failure to train these workers on preparation of these food items was so likely to result in a constitutional violation that it may represent a policy for which Aramark may be liable under § 1983. *City of Canton*, 489 U.S. at 390. Nor has Plaintiff set forth facts from which the Court can plausibly infer that a deficiency in Aramark's training program, rather than negligent administration of the training program, was the cause of any injury to him. *Id*. at 390–91.

Thus, Plaintiff's claim that Sarrell and Majors did not provide him with the diet that registered dietitians approved for him on August 19, 2022, for 55 days in violation of the Eighth Amendment, will proceed herein, and Plaintiff's other claims regarding this diet, including those against Aramark, are **DISMISSED**.

### c. Ensure

Plaintiff also claims that a radiologist in Nashville told him that the Ensure he drinks was entering his windpipe and increasing his risk of pneumonia, and he therefore should not drink this product, but Centurion has failed to order the "Two Cal" nutritional supplement that its dietitians and Dr. Samuels have prescribed for him due to cost [Doc. 11, p. 12]. This claim also will proceed herein.

### 4. Retaliatory Transfers

Plaintiff seeks to hold Helton, Dotson, and Cobble liable for his transfers among various TDOC facilities by alleging that these transfers occurred after "federal filings" from him and thus were retaliatory [Doc. 11, pp. 7–8].[3] Plaintiff's only factual support

---

[3] Plaintiff also refers to a lack of liaisons at BCCX "to oversee contract compliance" [Doc. 11, p. 8]. However, Plaintiff does not provide any facts from which the Court can find that

17

for this claim is that these Defendants acquiesced to violations of his federal constitutional rights documented in grievances and federal filings that "must pass over their desks" [*Id.* at 8].

These retaliatory transfer claims are not properly joined with Plaintiff's medical diet claims, as they involve totally separate Defendants and issues.[4]   As such, these claims are **DISMISSED without prejudice**.

### 5.    Medication Charges

In his amended complaint, Plaintiff generally claims that Centurion, Williams, Campbell, and Cobble have conspired together to charge inmates for "medical necessities" in order to increase profit and that Cobble therefore checks inmates' trust

---

any named Defendant is responsible for this lack of liaisons, or that this omission caused him to be transferred.  Moreover, breach of contract is a state law claim that is not cognizable under § 1983.  *Jordan v. Brown*, No. 1:16-CV-0001, 2016 WL 128520, at *2 (M.D. Tenn. Jan. 12, 2016) ("Breach of contract is a state-law issue. Neither the Eighth Amendment nor any other provision of the United States Constitution provides a basis for a prisoner to recover against prison officials for breach of a contract.").  Thus, this allegation fails to state a claim upon which relief may be granted under § 1983, and it is **DISMISSED**.

[4] Also, Plaintiff does not provide facts suggesting that any of these Defendants may be liable under § 1983 for these transfers.   Specifically, Plaintiff does not allege that these Defendants personally initiated these transfers but rather asserts that they must have known of these transfers because the transfers and Plaintiff's federal filings and/or grievances "pass[ed] over their desks."  But Plaintiff provides no facts from which the Court can plausibly infer that these Defendants knew that the transfers of Plaintiff between TDOC facilities were retaliatory.  *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) (holding § 1983 liability does not exist against supervisory personnel absent "a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it.").  And these Defendants cannot be liable § 1983 for not intervening in these transfers after Plaintiff complained.   *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (finding that knowledge of a prisoner's grievance and a failure to respond or remedy the complaint was insufficient to impose liability on supervisory personnel under § 1983).

18

accounts to see if they can afford to purchase those medical necessities even though many prisoners earn only 17 cents per hour [Doc. 11, p. 10].

However, a policy requiring non-indigent inmates to purchase medications is not unconstitutional. *See*, *e.g.*, *Reynolds v. Wagner*, 128 F.3d 166, 173–75 (3d Cir. 1997) ("If a prisoner is able to pay for medical care, requiring such payment is not 'deliberate indifference to serious medical needs.'"); *Roberson v. Bradshaw*, 198 F.3d 645, 647 (8th Cir. 1999) (requiring inmates to pay for their own medications if they can afford to do so is not a federal constitutional violation); *Lee v. Hatcher*, No. 3:16-CV-02590, 2016 WL 5467948, at *3 (M.D. Tenn. Sept. 29, 2016) ("Advising Plaintiff to purchase over-the-counter medication from the commissary, rather than continually dispensing it to him for free, also does not constitute deliberate indifference in the absence of any showing that Plaintiff lacks the funds to purchase the medication."); *Slattery v. Mohr*, No. 2:11-CV-202, 2012 WL 2931131, at *8 (S.D. Ohio July 17, 2012) (finding inmate forced to purchase over-the-counter medications from commissary pursuant to policy did not establish an Eighth Amendment violation where he failed to demonstrate that he was denied medical care due to his inability to afford medication).

Plaintiff does not allege that he was denied medical necessities due to him not being able to pay for them. As such, these allegations do not state a plausible claim for violation of § 1983, and are **DISMISSED**.

### 6. Medical Care

Plaintiff also generally alleges that Centurion and Dr. Rich have failed to (1) provide him pain relief for swelling in his neck and shoulder; (2) treat his difficulty

19

breathing and heart palpitations; and (3) treat his complications from swallowing due to the "[d]iverticular [p]ocket at the base of his throat," and that these Defendants acted "with deliberate and malicious intent" [Doc. 11, p. 9]. Plaintiff further states Dr. Samuels tried to assist him with unspecified issues, but Dr. Rich overrode Dr. Samuels's medical decisions, which caused Plaintiff to suffer from his dental conditions "via the '[c]at['s][ ]paw [t]heory" [*Id.* at 10].

A prison authority's deliberate indifference to an inmate's serious medical need violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (1976). Prison medical personnel or officials may be deliberately indifferent to a prisoner's serious medical needs "in their response to a prisoner's needs" or by "interfer[ing] with treatment once prescribed." *Id.* at 104–05. A medical provider violates a prisoner's Eighth Amendment right through actions that are "sufficiently harmful to evidence deliberate indifference to [the prisoner's] serious medical needs." *Id.* at 106. Deliberate indifference is equivalent to "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 839 (1994). Under this standard, a state actor is not liable under § 1983 unless he (1) knew that the inmate faced a substantial risk of serious harm; and (2) disregarded that risk by failing to take reasonable measures to abate it. *Id.* at 847.

Allegations that a prisoner did not receive the medical treatment he wanted or received a misdiagnosis do not state a claim for violation of the Eighth Amendment. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017) (holding that "[a] patient's disagreement with his physicians over the proper course of treatment alleges, at most, a medical-malpractice claim, which is not cognizable under § 1983"); *Gabehart v.*

20

*Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997) (finding "misdiagnoses, negligence, and malpractice" are not "tantamount to deliberate indifference"). Thus, where a prisoner received medical care, his disagreement with the adequacy of that care generally does not rise to the level of a constitutional violation. *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1996) (noting that "federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law"). But medical care that is "so woefully inadequate as to amount to no treatment at all" violates the Eighth Amendment. *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2001).

Plaintiff provides no facts about his lack of medical treatment for these conditions from which the Court can plausibly infer that it resulted from a custom or policy of Centurion. Also, Plaintiff does not set forth any facts from which the Court can plausibly infer that Dr. Rich was personally involved in the decisions to deny Plaintiff this medical treatment, that Dr. Rich disregarded a substantial risk of serious harm to Plaintiff with a mindset that amounts to criminal recklessness by not treating these issues, or that the medical treatment Dr. Rich provided him was so inadequate that it is basically no treatment. Additionally, Plaintiff does not provide any facts about Dr. Rich overriding another doctor's medical decisions for unspecified issues that would allow the Court to plausibly infer that these actions caused a violation of Plaintiff's constitutional rights for which any Defendant may be liable under a "cat's paw theory," which is a liability theory that applies in employment actions. *Marshall v. The Rawlings Co.*, 854 F.3d 368, 377

21

(6th Cir. 2017) (quoting *EEOC v. BCI Coca-Cola Bottling Co. of Los Angeles*, 450 F.3d 476, 484 (10th Cir. 2006)).

As such, Plaintiff's allegations regarding the denial of this medical treatment fail to state a claim upon which relief many be granted, and they are **DISMISSED**.

### 7. Dental and Eye Care

Plaintiff also claims Meydrech denied him dental care for 18 months by placing him on an extraction list for 3 broken teeth, even though one such tooth exposed a nerve, and Meydrech was aware that Plaintiff did not have teeth on the other side of his mouth [Doc. 11, pp. 10–11]. Also, after Meydrech extracted one of Plaintiff's upper teeth, he told Plaintiff to return in a month for extraction of a tooth on the lower jaw, but that extraction had not occurred when Plaintiff filed his amended complaint, even though "[n]one of Plaintiff's ten teeth align to allow foods to be chewed," and Meydrech was aware of Plaintiff's dental injuries [*Id.* at 11].

Plaintiff also claims that he has a growth in his right neck that pinches a nerve, cuts off the blood supply to a muscle in his right shoulder, and now affects his eye [*Id.*]. But he cannot go to an optometrist for this issue due to Wheeler's directive providing that medical personnel cannot refer Plaintiff or other inmates to the dentist or for eye care [*Id.* at 16].

Liberally construing the amended complaint in favor of Plaintiff, he alleges that a policy of Centurion caused (1) Meydrech to respond to Plaintiff's dental care needs in a deliberately indifferent and/or negligent manner and (2) Plaintiff to not receive needed

22

eye care. As such, these claims will also proceed herein against Centurion and Meydrech.

### 8. Property and Cell Transfers

Plaintiff's allegations that Hensley and Sgt. Johnson threw away his property and Hensley transferred him to cells with inmates that smoke "Deuce" are not related to his claims regarding his medical diet and are against different Defendants. As such, these allegations are not properly joined in Plaintiff's amended complaint under Rule 20(a), and are **DISMISSED without prejudice**.

### 9. DNSF Claims

Plaintiff's claims against Holloway and Masoncup regarding denial of his property, including a Bible, during his confinement in DNSF [Doc. 11, p. 14] also are not related to his claims regarding his medical diet and are against different Defendants. As such, these allegations are not properly joined herein under Rule 20(a), and are **DISMISSED without prejudice**.

### 10. Supervisory Liability Claims

Plaintiff further seeks relief under § 1983 from a number of Defendants, including Helton, Dotson, Cobble, Campbell, Williams, Wheeler, and Mumpower, based on their failure to properly supervise others and/or their failure to intervene after Plaintiff notified them of the incidents at issue in his amended complaint [*See, e.g.,* Doc. 11, pp. 7–8, 14–17]. However, Plaintiff does not provide any facts from which the Court can plausibly infer that any Defendant may be liable under § 1983 based on this theory.

23

Government officials may be individually liable under § 1983 for their failure to supervise employees if they "either encouraged the specific incident of misconduct or in some other way directly participated in it." *Harvey v. Campbell Cnty.*, 453 F. App'x 557, 563 (6th Cir. 2011); *Troutman v. Louisville Metro. Dep't of Corrs.*, 979 F.3d 472, 487–88 (6th Cir. 2020) (providing that "at minimum a plaintiff must show that a supervisory official at least implicitly authorized, approved[,] or knowingly acquiesced in the unconstitutional conduct of the offending subordinate" in order for the supervisory official to be liable for a subordinate's acts under § 1983) (internal quotation marks and citations omitted). Additionally, a supervisor may be liable under § 1983 if he or she "abandon[s] the specific duties of [his or her] position . . . in the face of actual knowledge of a breakdown in the proper workings of the department." *Troutman*, 979 F.3d at 487.

Plaintiff provides no facts from which the Court can plausibly infer that any supervisory Defendant directly participated in or acquiesced to any constitutional violation. He also does not provide any facts from which the Court can plausibly infer that any Defendant abandoned his or her duties despite knowledge of a breakdown in their department. While Plaintiff claims that he alerted some supervisory Defendants of issues he was facing and they failed to intervene, these allegations do not allow the Court to plausibly infer that the supervisory Defendants are liable under § 1983. *Shehee*, 199 F.3d at 300 (finding that a failure to respond to or remedy a prisoner's grievance was insufficient to impose liability on supervisory personnel under § 1983).

Moreover, Plaintiff's attempt to hold supervisory Defendants, including Wheeler, individually liable for policies that Plaintiff alleges led to violations of his constitutional

rights "improperly conflates a § 1983 claim of individual supervisory liability with one of municipal liability." *Harvey*, 453 F. App'x at 563 (internal quotation marks omitted) (citing *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 n.3 (6th Cir. 2005)); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008) (same). Such claims could only be cognizable against supervisory Defendants in their official capacities. *Harvey*, 453 F. App'x at 563. Accordingly, while Plaintiff specifically alleges that Wheeler was responsible for implementing a Centurion policy that led to denials of dental and eye care to him, the Court has allowed these claims to proceed only against Centurion, as set forth above.

As such, Plaintiff's allegations regarding supervisory liability fail to state a plausible claim for § 1983 relief, and they are **DISMISSED**.

### 11. State Law Claims

Plaintiff appears to seek to hold Defendants liable for violations of TDOC policy and/or Tennessee law, including through breach of contract. However, these allegations fail to allege a claim upon which relief may be granted under § 1983. *Helphenstine v. Lewis Cnty.*, 60 F.4th 305, 322 (6th Cir. 2023) ("Alone, the failure to follow an internal policy does not give rise to a deliberate indifference claim." (citing *Griffith v. Franklin Cnty.*, 975 F.3d 554, 578 (6th Cir. 2020))); *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995) (citation omitted); *Jordan v. Brown*, No. 1:16-CV-0001, 2016 WL 128520, at *2 (M.D. Tenn. Jan. 12, 2016) ("Breach of contract is a state-law issue. Neither the Eighth Amendment nor any other provision of the United States Constitution provides a basis for a prisoner to recover against prison officials for breach of a contract.").

Accordingly, Plaintiff's state law claims are **DISMISSED**.

### 12. ADA and Rehabilitation Act Claims

As set forth above, Plaintiff seeks to hold Defendants liable for violation of the ADA and the Rehabilitation Act [Doc. 11, p. 1]. Title II of the ADA provides, in relevant part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such an entity." 42 U.S.C. § 12132. The ADA defines a "public entity" as "any State or local government; [or] any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1). However, "the ADA [does not] impose liability upon individuals." *Lee v. Mich. Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004) (citing 29 U.S.C. § 794(b)(RA); 42 U.S.C. § 12131(1)). Nor does it impose liability against private entities like Centurion or Aramark. *Vick v. CoreCivic*, 329 F. Supp. 3d 426, 441–42 (M.D. Tenn. 2018) (collecting cases).

The ADA requires a plaintiff to establish, among other things, that he has a disability that was the sole reason for discrimination against him. *See Jones v. City of Monroe*, 341 F.3d 474, 477 (6th Cir. 2003). "Because the ADA sets forth the same remedies, procedures, and rights as the Rehabilitation Act . . . claims brought under both statutes may be analyzed together." *Thompson v. Williamson Cnty.*, 219 F.3d 555, 557 n.3 (6th Cir. 2000).

26

As Plaintiff has not set forth any facts from which the Court can plausibly infer that any Defendant discriminated against him due to his disability, his ADA and Rehabilitation Act claims are **DISMISSED**.

### 13. Section 1981 Claims

Plaintiff also seeks relief under 42 U.S.C. § 1981 [Doc. 11, p. 1]. This federal law prohibits racial discrimination and provides in relevant part that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). To establish a claim for discrimination under § 1981, a plaintiff must plead that "(1) he belongs to an identifiable class of persons who are subject to discrimination based on their race; (2) the defendant intended to discriminate against him on the basis of race; and (3) the defendant's discriminatory conduct abridged a right enumeration in section 1981(a)." *Amini v. Oberlin Coll.*, 440 F.3d 350, 358 (6th Cir. 2006) (citation omitted).

Plaintiff's amended complaint does not allow the Court to plausibly infer that he is part of a class of persons who are subject to racial discrimination. As such, his claims for violation of § 1981 are **DISMISSED**.

### 14. Title VII of the Civil Rights Act

Plaintiff also seeks relief under Title VII of the Civil Rights Act, which provides that an employer may not "discriminate against any individual with respect to his

27

compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). However, Title VII's protections do not apply to a prisoner, like Plaintiff. *Keran v. Chambers-Smith*, No. 2:20-CV-2002, 2020 WL 4346644, at *3 (S.D. Ohio July 29, 2020) (collecting cases). And even if Title VII's protections applied to Plaintiff, he has not set forth facts suggesting that any Defendant's discriminated against him based on his race, color, religion, sex, or national origin with regard to employment. As such, this claim is therefore **DISMISSED.**

### E. Conclusion

For the reasons set forth above, only Plaintiff's claims that (1) Sarrell did not provide him with his medical diet for 8 days during a quarantine; (2) Dr. Rich cancelled his medical diet and the directive allowing him to eat in his cell; (3) Sarrell and Majors did not provide him with his approved diet for 55 days in violation of the Eighth Amendment; (4) Centurion has refused to order a prescribed drink for him; and (5) a policy of Centurion caused Meydrech to respond in a deliberately indifferent and/or negligent manner to Plaintiff's dental care needs and Plaintiff to not receive needed eye care will proceed in this action. All other claims and Defendants will be **DISMISSED**.

## II. MOTION FOR PRELIMINARY INJUNCTION

Plaintiff has filed a motion for preliminary injunction and/or restraining order seeking to have the Court (1) stop the TDOC and its employees from transferring him in a retaliatory manner; (2) stop Centurion and its employees from denying him care for his medical and dental needs, and (3) stop Aramark and its employees from denying him

proper nutrition through his medical diet [Doc. 3, pp. 1–2].[5]  Plaintiff also filed a

memorandum in support of this motion [Doc. 4], and an addendum [Doc. 6-1], which he

signs as an affidavit and in which he states that his request for injunctive relief regarding

retaliatory transfers is supported by, among other things, the fact that other TDOC

prisoners have been transferred in a retaliatory manner and he has filed other detailed

allegations regarding retaliatory transfers in another lawsuit [*Id.* at 1–3].

    Rule 65(b) of the Federal Rules of Civil Procedure governs issuance of a

temporary restraining order ("TRO") and provides that:

> The Court may issue a temporary restraining order without written or oral
> notice to the adverse party or its attorney only if: (A) specific facts in an
> affidavit or a verified complaint clearly show that immediate and
> irreparable injury, loss, or damage will result to the movant before the
> adverse party can be heard in opposition[.]

Fed. R. Civ. P. 65(b)(1).  Plaintiff has the burden to prove he is entitled to a TRO.

*Helling v. McKinney*, 509 U.S. 25, 35 (1998).

    A preliminary injunction is "an extraordinary remedy never awarded as of right."

*Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  In determining whether to

grant this relief, courts balance the following factors: (1) whether plaintiff "has shown a

strong likelihood of success on the merits;" (2) whether plaintiff will suffer irreparable

injury in the absence of an injunction; (3) whether the injunction will cause substantial

---

[5] After Plaintiff filed this motion, he filed a notice of change of address providing that he
is now incarcerated in DNSF [Doc. 14].  Notably, such a move generally moots requests for
injunctive relief.  *See, e.g., Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir.1996) (holding inmate's
claim for declaratory and injunctive relief against prison officials became moot once prisoner
was transferred to different facility).  However, given Plaintiff's allegations of frequent transfers
in his filings and the nature of his allegations, the Court will address this motion on the merits,
rather than deny it on this ground.

harm to others; and (4) whether the injunction would serve the public interest. *Overstreet*

*v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). When one

factor is dispositive, a district court need not consider the others. *D.T. v. Sumner Cnty.*

*Sch.*, 942 F.3d 324, 327 (6th Cir. 2019).

As set forth above, Plaintiff's only claims proceeding herein are his claims that

(1) Sarrell did not provide him with his medical diet for 8 days during a quarantine;

(2) Dr. Rich cancelled his medical diet and the directive allowing him to eat in his cell;

(3) Sarrell and Majors did not provide him with his approved diet for 55 days in violation

of the Eighth Amendment; (4) Centurion has refused to order a prescribed drink for him;

and (5) a policy of Centurion caused Meydrech to respond in a deliberately indifferent

and/or negligent manner to Plaintiff's dental care needs and Plaintiff to not receive

needed eye care. However, as Plaintiff has not set forth facts from which the Court can

plausibly infer that he will suffer irreparable injury if the Court does not issue an

injunction regarding his claims proceeding herein, the Court will deny his request for

injunctive relief on this ground. *Id.* (providing that "a district court is 'well within its

province' when it denies a preliminary injunction based solely on the lack of an

irreparable injury" (citation omitted)). Also, while nothing in the record suggests that

providing Plaintiff injunctive relief regarding his claims proceeding herein would cause

substantial harm to others, and state facilities treating all inmates equally serves the

public interest, court intervention in prison operations without a compelling reason to do

so is against public policy. *Glover v. Johnson*, 855 F.2d 277 (6th Cir. 1988) (setting forth

public policy concerns regarding court interference with jail administration and holding

30

that courts should not "attempt to administer any portion of a state correctional system program except in the most compelling situations").

After balancing all relevant factors, the Court finds that Plaintiff has not met his burden to establish that he is entitled to the extraordinary relief of a preliminary injunction or a temporary restraining order, and his motion for this relief [Doc. 3] is **DENIED**.

## III.    CONCLUSION

For the reasons set forth above:

1.     Even liberally construing the amended complaint in favor of Plaintiff, it fails to state a claim upon which relief may be granted under § 1983, except his claims that (1) Sarrell did not provide him with his medical diet for 8 days during a quarantine; (2) Dr. Rich cancelled his medical diet and the directive allowing him to eat in his cell; (3) Sarrell and Majors did not provide him with his approved diet for 55 days in violation of the Eighth Amendment; (4) Centurion has refused to order a prescribed drink for him; and (5) a policy of Centurion caused Meydrech to respond in a deliberately indifferent and/or negligent manner to Plaintiff's dental care needs and Plaintiff to not receive needed eye care;

2.     All Defendants except Dr. Rich, Sarrell, Majors, Centurion, and Meydrech are **DISMISSED**;

3.     Plaintiff's motion for preliminary injunction and restraining order [Doc. 3] is **DENIED**;

4.     The Clerk is **DIRECTED** to send Plaintiff service packets (a blank summons and USM 285 form) for Defendants Dr. Rich, Sarrell, Majors, Centurion, and Meydrech;

5.     Plaintiff is **ORDERED** to complete the service packets and return them to the Clerk's Office within twenty (20) days of entry of this order;

6.     At that time, the summonses will be signed and sealed by the Clerk and forwarded to the U.S. Marshal for service, *see* Fed. R. Civ. P. 4;

7. Service on Defendants shall be made pursuant to Rule 4(e) of the Federal Rules of Civil Procedure and Rule 4.04(1) and (10) of the Tennessee Rules of Civil Procedure, either by mail or personally if mail service is not effective;

8. Plaintiff is **NOTIFIED** that if he fails to timely return the completed service packets, this action may be dismissed;

9. Defendants shall answer or otherwise respond to the amended complaint within twenty-one (21) days from the date of service. If any Defendant fails to timely respond to the amended complaint, it may result in entry of judgment by default against him;

10. Plaintiff is **ORDERED** to immediately inform the Court and Defendants or their counsel of record of any address changes in writing. Pursuant to Local Rule 83.13, it is the duty of a pro se party to promptly notify the Clerk and the other parties to the proceedings of any change in his or her address, to monitor the progress of the case, and to prosecute or defend the action diligently. E.D. Tenn. L.R. 83.13. Failure to provide a correct address to this Court within fourteen days of any change in address may result in the dismissal of this action.

IT IS SO ORDERED.

ENTER:

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE