UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

CALVIN-OTIS TANKESLY, JR., )
)
Plaintiff, )
)
v. ) No.    1:23-CV-90-TAV-SKL
)
CENTURION OF TENNESSEE, LLC, )
EMMA RICH, EDWARD )
MEYDRECH, WILLIAM SARRELL, )
and MAGAN MAJORS, )
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiff, a Tennessee Department of Correction ("TDOC") prisoner, filed this pro

se action for violation of 42 U.S.C. § 1983 that is proceeding as to Plaintiff's claims that

(1) Aramark employee William Sarrell did not provide him with his medical diet for 8 days

during a quarantine; (2) Dr. Emma Rich cancelled his medical diet and the directive

allowing him to eat in his cell; (3) Sarrell and Aramark employee Magan Majors did not

provide him with his approved diet for 55 days in violation of the Eighth Amendment;

(4) Centurion of Tennessee, LLC ("Centurion") has refused to order a prescribed drink,

specifically "Two Cal," for him; and (5) a policy of Centurion caused Dr. Edward

Meydrech to respond in a deliberately indifferent and/or negligent manner to Plaintiff's

dental care needs and Plaintiff to not receive needed eye care [Doc. 17, p. 31].

Now before the Court are Plaintiff's (1) motion for the Court to reconsider its

dismissal of former defendant Aramark from this action [Doc. 21], (2) motion for

temporary restraining order [Doc. 23], (3) motion to resubmit summonses [Doc. 37],

(4) motion to serve process in person [Doc. 43], (5) motions for default judgment [Docs. 44, 45], (6) motion for a hearing regarding the motions for default judgment [Doc. 46], and (7) motion for status of service of process [Doc. 47]. Also before the Court is Centurion's motion to dismiss Plaintiff's claims against it for failure to state a claim [Doc. 27] and motion to strike Plaintiff's sur-reply to its motion to dismiss the claims against it [Doc. 39]. The Court will address these filings in turn based on their substance.

## I.    ARAMARK

This Court dismissed Aramark from this action after finding that Plaintiff had not adequately alleged that any custom or policy of this entity caused the violations of his constitutional rights underlying his claims proceeding herein [Doc. 17, pp. 11–17]. Plaintiff has filed a motion for the Court to reconsider this dismissal [Doc. 21]. However, as Plaintiff's amended complaint does not allow the Court to plausibly infer that a custom or policy of Aramark caused any alleged violation of Plaintiff's constitutional rights that underlies any claim proceeding herein, this motion [*Id.*] is **DENIED**.

Under Rule 54(b) of the Federal Rule of Civil Procedure, district courts may "reconsider interlocutory orders and . . . reopen any part of a case before entry of final judgment." *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004). "Traditionally, courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Rodriguez*, 89 F. App'x at 959 (citation omitted). However, "such motions are not a means by which

2

to re-litigate issues previously considered by the Court or to present evidence that could have been raised earlier." *Equal Emp. Opportunity Comm'n v. HP Pelzer Auto. Sys., Inc.*, No. 1:17-CV-31, 2018 WL 6574772, at *2 (E.D. Tenn. Dec. 13, 2018) (internal quotation marks and citation omitted).

In his motion for the Court to reconsider its dismissal of Aramark, Plaintiff does not set forth any change of controlling law, new evidence that his now available to him, or any clear error or manifest injustice regarding the Court's dismissal of Aramark. Instead, Plaintiff first presents legal conclusions, case citations, and facts regarding Aramark and him, many of which are not in his amended complaint [Doc. 21, pp. 1–6]. Plaintiff then asserts that he intended that a statement in his amended complaint[1] that Aramark and others did not provide him with his medical diet from June 2021 to February 2023, to allege that Aramark had a custom or policy of not properly training its employees to provide him with a medical diet [*Id.* at 6–7] before again relying on facts that are not in his amended complaint and stating that other courts have allowed claims against Aramark to proceed in other lawsuits he has filed [*Id.* at 7–9].

But it is apparent that Plaintiff could have, but did not, rely on the factual allegations regarding Aramark that are in his motion for reconsideration but not his amended complaint when he filed his amended complaint. As such, the factual allegations that are in Plaintiff's

---

[1] Plaintiff also relies upon a statement from his original complaint to assert that he adequately stated a claim against Aramark [*Id.* at 6]. But prior to Plaintiff filing his amended complaint, the Court notified Plaintiff that his amended complaint would completely replace his original complaint [Doc. 8 p. 6].

3

motion for reconsideration but not in his amended complaint are not grounds for the Court to reconsider its dismissal of Aramark. *Id.*

Moreover, Plaintiff's argument that his allegation in his amended complaint that Aramark and others did not provide him with his medical diet from June 2021 to February 2023, was sufficient to allege that a custom or policy of Aramark caused a violation of his constitutional rights is an improper attempt to relitigate an issue this Court has already decided. Specifically, in its screening order, the Court found that the facts that Plaintiff set forth to support of his allegation that Aramark and others did not provide him with his medical diet from June 2021 to February 2023, did not allege a plausible claim for violation of § 1983 [Doc. 17, pp. 16–17 (holding that "Plaintiff's allegation that these Defendants ultimately complied with the letter but not the spirit of [his medical] diet does not allow the Court to plausibly infer a violation of his constitutional rights," that Plaintiff's "allegation that two evening shift Aramark workers told him that they do not know how to cook spaghetti or make egg salad . . . does not allow the Court to plausibly infer that Aramark's alleged failure to train these workers on preparation of these food items was so likely to result in a constitutional violation that it may represent a policy for which Aramark may be liable under § 1983," and that Plaintiff did not "set forth facts from which the Court can plausibly infer that a deficiency in Aramark's training program, rather than negligent administration of the training program, was the cause of any injury to him")].

Also, the fact that other district courts have found that other complaints Plaintiff has filed state a plausible claim against Aramark does not have any relevance to this Court's

4

determination that Plaintiff's amended complaint in this case fails to state a plausible § 1983 claim against Aramark.

As such, Plaintiff's motion for the Court to reconsider its dismissal of Aramark [Doc. 21] is **DENIED**.

## II.    MOTION FOR TEMPORARY RESTRAINING ORDER

Plaintiff has filed a motion for a temporary restraining order ("TRO") asking the Court to restrain Centurion, Dr. Rich, and Dr. Meydrech from denying him medical and dental treatment [Doc. 23, p. 1]. In support of this request, Plaintiff state that he "has reason to believe" that after the United States Marshals Service ("USMS") served Dr. Rich with process in this case,[2] this defendant twice denied or discontinued another medical provider's order for him to receive supplements without reviewing his medical condition or needs [*Id.* at 1–3]. According to Plaintiff, the second time Dr. Rich cancelled a supplement that another medical provider had prescribed, this resulted in him not receiving an Ensure supplement he was supposed to consume 3 times a day for 3 days and caused him to consume only 805 calories for those 3 days, which he claims establishes that he will incur an irreparable injury unless the Court enters a temporary restraining order [*Id.* at 1, 3–4].

In support of his motion for a temporary restraining order, Plaintiff filed an affidavit indicating in relevant part that:

---

[2] While it is not ultimately relevant to the Court's consideration of this motion, the Court notes that the record reflects that the USMS has not served Dr. Rich with process in this case, as the USMS returned her summons as unexecuted [Doc. 24].

5

(1)     for 14 months, he has been unable to eat solid foods due to a tumor and a lack of connecting teeth;

(2)     in March 2024, he had 14 teeth removed in Nashville;

(3)     after this removal, he told Dr. Meydrech that he still appeared to have bone fragments in his healing gums;

(4)     Dr. Meydrech refused to x-ray Plaintiff's gums or prepare him dentures;

(5)     Plaintiff's medical diet that Dr. Samuel and/or Nurse Practitioner Tollett prescribed as recently as April 1, 2024, includes "one (1) Two-Cal nutritional supplement and three (3) Ensure nutritional drinks a day per approval of" a registered dietitian;

(6)     on April 3, 2024, Defendant Rich denied the renewal of the Two-Cal supplement;

(7)     on April 4, 2024, an unknown individual reissued the Two-Cal supplement;

(8)     on April 12, 2024, Dr. Rich discontinued the Ensure nutritional supplement without considering the professional medical opinion of Dr. Samuel or Nurse Practitioner Tollett, his continued neck swelling, or his need of these supplements, based on her assertion that a registered dietitian had not approved this supplement;

(9)     Dr. Rich's denial of his Ensure leaves him with "805 calories," in support of which he cites an attached document listing his daily nutritional intake;

(10)    Dr. Rich's denial of his Ensure is "ongoing"; and

(9)     Plaintiff was told he would have a "Tel-Med conference with the dietitian" regarding this issue, but he has been waiting for such a conference with the dietitian for ten months.

[*Id.* at 5–6]. However, the nutritional summary on which Plaintiff relies to support his

sworn assertion that Dr. Rich's denial of the Ensure supplement results in him receiving

6

only "805 calories" establishes that Plaintiff's diet includes 2,985 calories, of which the Ensure supplements amount to only 750 calories [Doc. 23-1 p. 17].[3] Plaintiff additionally filed a number of unsworn letters and lists that include information regarding his medical diet and care and dental care [*Id.* at 2–16, 18].

Centurion filed a response in opposition to Plaintiff's motion for a TRO asserting in relevant part that Plaintiff has not presented sufficient grounds for the Court to reconsider its denial of his previous request for a TRO and has not established that he is entitled to a TRO [Doc. 36].

Plaintiff filed a reply [Doc. 40]. In his reply, Plaintiff states in relevant part that he has provided new proof to support his request for a TRO, that he inadvertently failed to include an affidavit about Dr. Meydrech refusing him dental treatment in January 2024 with his initial motion for a TRO, and that he has established proof of Centurion's pattern or practice of denying him medical and dental care through cancelled appointments and prison officials' decision to continue to provide him with a supplement that a medical provider recommended he not drink due to it entering his windpipe [*Id.* at 1–10]. Plaintiff also filed an affidavit claiming that in January 2024, he had a conversation with Dr. Meydrech in which this defendant refused to pull out all of his teeth, stated that he would have to go to a special needs facility for such a procedure, and stated "you've already said

---

[3] This same document also demonstrates that Plaintiff is receiving the "Two Cal" supplement [*Id.*].

7

you're suing me, why would I pull your teeth now" and "[w]hy would I do any work on you when you're suing me" [*Id.* at 8].

First, as Centurion points out, Plaintiff previously filed a motion for a TRO [Doc. 3] which the Court denied [Doc. 17, pp. 29–31].  Accordingly, to the extent that Plaintiff's pending motion for a TRO requests reconsideration of the Court's denial of his previous motion based on evidence that was previously available to him, he has not set forth sufficient grounds for the Court to reconsider this interlocutory order.  *Rodriguez*, 89 F. App'x at 959.

Additionally, Plaintiff's attempt to raise new arguments and present new proof to support issuance of a TRO in his reply are improper.  *Scottsdale Ins. Co. v. Flowers,* 513 F.3d 546, 553 (6th Cir. 2008) (noting that it is improper for a party to present new proof or raise new arguments in a reply, and that courts therefore treat arguments that a party raises for the first time in a reply as waived) (citation omitted).  As such, the Court does not consider the new arguments or evidence Plaintiff presents in his reply [Doc. 40].

The Court will now examine the merits of Plaintiff's request for a TRO based on new allegations.  Rule 65(b) of the Federal Rules of Civil Procedure governs this request and provides that:

> The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition[.]

Fed. R. Civ. P. 65(b)(1). Plaintiff has the burden to prove he is entitled to a TRO. *Helling v. McKinney*, 509 U.S. 25, 35 (1998). Injunctive relief is "an extraordinary remedy never awarded as of right." *See Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Such relief "should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citations omitted).

Plaintiff has not met his burden to establish that he is entitled to a TRO. First, Plaintiff has not shown a "strong likelihood" that he will succeed on the merits of his claims. While Plaintiff has set forth self-serving statements regarding his claims in his sworn amended complaint [Doc. 11] and the sworn and unsworn documents he filed in support of his motion and his reply [Doc. 23-1, pp. 2–18; Doc. 40 p. 8], this evidence is only proof of Plaintiff's version of the events, and does not establish a strong likelihood that he will prove at trial that any defendant violated his constitutional rights. *Johnson v. Robertson*, No. 3:23-CV-1379, 2024 WL 2750942, at *8 (M.D. Tenn. May 29, 2024) (noting that an affidavit from a plaintiff is insufficient proof to support an award of injunctive relief (citing *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000))).

Moreover, Plaintiff has not established that he will suffer irreparable injury without the requested injunction. While Plaintiff states in his sworn motion that he only received approximately 800 calories for 3 days after Dr. Rich stopped his Ensure supplements[4] and

---

[4] Notably, while Plaintiff states that Dr. Rich cancelled these supplements despite other medical providers ordering them because a nutritionist had not approved them, this does not allow the Court to plausibly infer a violation of his constitutional rights. *Burton v. Lester*, No. 2:24-CV-

9

claims in his affidavit that this denial of the Ensure supplements is ongoing, the nutritional summary that Plaintiff cites and relies upon in his affidavit for his daily nutritional information directly contradicts his assertion that he only receives approximately 800 calories per day without the Ensure supplements [Doc. 23-1, p. 17]. Instead, this document demonstrates that Plaintiff's daily diet includes 2,985 calories, of which the Ensure supplements amount to 750 calories [*Id.*]. Although this document suggests that some of the calories listed therein come from food that Plaintiff purchases from commissary, rather than food that the prison provides, Plaintiff does not allege or suggest that he cannot continue to consume all the items listed on this summary on a daily basis. Nor does he allege or suggest that if he could not continue to do so, he would not receive other nutrition. As such, it is apparent from the record that Plaintiff is able to consume more than 2,000 calories per day even without the Ensure supplements that Dr. Rich discontinued, which Plaintiff does not allege or suggest may cause or has caused him irreparable harm.

Also, while nothing in the record suggests that providing Plaintiff with the requested injunctive relief would cause substantial harm to others, court intervention in prison operations without a compelling reason to do so is against public policy. *Glover v. Johnson*, 855 F.2d 277 (6th Cir. 1988) (setting forth public policy concerns regarding court interference with jail administration and holding that courts should not "attempt to

_____

108, 2024 WL 3633504, at *4 (W.D. Mich. Aug. 2, 2024) (finding that "a [medical providers]'s decision to reject another doctor's treatment recommendation in favor of his [or her] own 'does not amount to deliberate indifference where both recommendations are made by qualified medical professionals' and the prison doctor's decision [wa]s made for a medical reason" (quoting *Lloyd v. Moats*, 721 F. App'x 490, 495 (7th Cir. 2017))).

administer any portion of a state correctional system program except in the most compelling situations").

After balancing all relevant factors, the Court finds that Plaintiff has not met his burden to establish that he is entitled to the extraordinary relief of a temporary restraining order, and his motion for this relief [Doc. 23] is **DENIED**.

## III. SERVICE ISSUES

After the USMS returned the summonses issued for Dr. Rich and Dr. Meydrech as "unexecuted" [Docs. 24, 26] and the summonses issued for Sarrell and Majors as "executed" [Docs. 25, 35], Plaintiff filed a number of motions regarding service, including a motion to resubmit summons [Doc. 37], a motion to serve process in person [Doc. 43], motions for default judgment as to Sarrell and Majors [Docs. 44, 45], a motion for hearing regarding his motions for default judgment [Doc. 46], and a motion for status of service of process [Doc. 47].

The Court will address the motions for default judgment before addressing the motions regarding service of process.

### A. Default

In his motions for default judgment against Sarrell and Majors, Plaintiff requests entry of default judgment against these defendants due to their failure to timely answer his complaint after service of process, and he filed affidavits regarding service of process and proposed default judgment orders in support of these motions [Docs. 44, 44-1, 45, 45-1].

11

Plaintiff also filed a motion requesting a hearing on his motions for default judgment [Doc. 46].

Under Rule 55(a) of the Federal Rules of Civil Procedure, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise," the Clerk must enter a default. Fed. R. Civ. P. 55(a). And it is only after the Clerk enters a default that the plaintiff may move the Court for entry of default judgment under Rule 55(b). Fed. R. Civ. P. 55(b).

Plaintiff did not comply with this two-step process by seeking the Clerk's entry of default prior to seeking default judgment. Thus, his request that the Court enter default judgments is improper. *See, e.g., Devlin v. Kalm*, 493 F. App'x 678, 685 (6th Cir. 2012) (providing that "it was procedurally improper for Plaintiff to move for entry of default judgment without first obtaining an entry of default from the clerk").

Accordingly, Plaintiff's motions for default judgment [Docs. 44, 45] and his motion for a hearing regarding his motions for default [Doc. 46] are **DENIED**.

## B. Service Issues

As set forth above, Plaintiff has filed motions for reissuance of summons and/or in person service of process on certain defendants [Docs. 37, 43]. Also, the USMS returned the summonses issued for Dr. Rich and Dr. Meydrech as "unexecuted" [Docs. 24, 26] and the summonses issued for Sarrell and Majors as "executed," even though it does not appear that these defendants personally signed the certified mail returns for the summonses [Docs. 25, 35].

12

Plaintiffs generally have the burden of effectuating service of process on defendants. Fed. R. Civ. P. 4(c)(1). But with regard to service of process by litigants proceeding *in forma pauperis*, the Sixth Circuit has stated as follows:

> Together, Rule 4(c)[3] and 28 U.S.C. § 1915[d] stand for the proposition that when a plaintiff is proceeding in forma pauperis the court is obligated to issue plaintiff's process to a United States Marshal who must in turn effectuate service upon the defendants, thereby relieving a plaintiff of the burden to serve process once reasonable steps have been taken to identify for the court the defendants named in the complaint.

*Byrd v. Stone*, 94 F.3d 217, 219 (6th Cir. 1996).

The record establishes that Plaintiff has taken reasonable steps to identify all defendants [*See*, *e.g.*, Doc. 11]. Accordingly, Plaintiff's motions regarding service of process [Docs. 37, 43, 47] are **GRANTED in part** only to the extent that the Clerk is **DIRECTED** to send a copy of this memorandum opinion and order and the amended complaint [Doc. 11] to the Attorney General for the State of Tennessee, who is **ORDERED** to provide the Court with any information to which he has access that may help the USMS effectuate service on Dr. Rich, Dr. Meydrech, Sarrell, and Majors. The Attorney General should file this information under seal with the Court within 15 days after entry of this memorandum opinion and order. Upon receipt of this information from the Attorney General, the Clerk is **DIRECTED** to sign and seal summonses for these defendants and to forward those summonses to the USMS for service of process. Fed. R. Civ. P. 4.

However, in the event that any defendant files a waiver of service or an answer to the complaint prior to the Attorney General filing the information requested above, that

13

will obviate the Court's need for this information from the Attorney General, and the Attorney General therefore will be relieved from complying with this order without further action from the Court.

Also, Plaintiff is **NOTIFIED** that, if the USMS returns a new summons the Clerk issues for any Defendant based on the information the Attorney General provides as unexecuted and Plaintiff does not provide additional information regarding service on that defendant within 14 days of the return of the unexecuted summons, the Court will dismiss that defendant pursuant to Rules 4(m) and/or 41(b) of the Federal Rules of Civil Procedure without further notice.

## IV.    MOTION TO DISMISS

Centurion has filed a motion to dismiss Plaintiff's claims against it [Doc. 27] and a memorandum in support of that motion [Doc 28]. Plaintiff filed a response in opposition [Doc. 31], Centurion filed a reply [Doc. 34], and Plaintiff filed a sur-reply [Doc. 38]. Centurion also filed a motion to strike Plaintiff's sur-reply [Doc. 39], to which Plaintiff filed a response [Doc. 42].

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint fails to state a plausible claim for relief when "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id*. at 679. In considering a motion to dismiss, a court "must

14

accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007).

Additionally, while Plaintiff's claims proceeding herein survived the Court's initial screening under the Prison Litigation Reform Act ("PLRA"), the standard for motion to dismiss is a higher bar than the standard in 28 U.S.C. § 1915. *See, e.g, Leach v. Corr. Corp. of Am.*, No. 3:16-CV-2876, 2017 WL 35861, at *3 (M.D. Tenn. Jan. 4, 2017) (stating the required screening of a plaintiff's complaint under the PLRA is "a lower burden for the plaintiff to overcome in order for his claims to proceed" than a motion to dismiss).

First, as Centurion accurately points out in its motion to strike Plaintiff's sur-reply, Plaintiff did not seek the Court's permission to file a sur-reply regarding Centurion's motion to dismiss his claims, as this Court's local rule requires. E.D. Tenn. L.R. 7.1 (providing a briefing schedule for motions under which parties may file an opening brief, an answering brief, and a reply brief, and specifically stating that "[n]o additional briefs, affidavits, or other papers in support of or in opposition to a motion shall be filed without prior approval of the Court, except that a party may file a supplemental brief of no more than 5 pages to call to the Court's attention developments occurring after a party's final brief is filed."). In his response to this motion, Plaintiff states that he did not have access to the Court's local rules to know that he had to seek permission to file a sur-reply and would have done so it if he had known of this rule, and also notes that he does not oppose the Court allowing Centurion to file a reply to his sur-reply [Doc. 42, pp. 1–2].

15

Plaintiff's sur-reply mainly sets forth arguments that are not based on the allegations of his amended complaint but instead rely on other factual and legal arguments that have little, if any, information that is relevant to the main issue before the Court, which is whether the amended complaint plausibly states a claim for relief against Centurion under the standard the Court set forth above. Thus, the Court will not consider the merits of any of the arguments in Plaintiff's sur-reply in evaluating Centurion's motion to dismiss. Nevertheless, as the sur-reply is not a pleading,[5] the Court will not strike it.

In evaluating Centurion's motion to dismiss, the Court will focus on whether Plaintiff's amended complaint states a plausible claim against Centurion. In order for Plaintiff's complaint to state a claim against Centurion, it must contain facts from which the Court can plausibly infer that a custom or policy of this entity caused a violation of his constitutional rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 708 (1978) (Powell, J., concurring) (explaining a municipality can only be held liable for harms that result from a constitutional violation when that underlying violation resulted from "implementation of its official policies or established customs"); *Braswell v. Corrections Corp. of America*, 419 F. App'x 622, 627 (6th Cir. 2011).

---

[5] Rule 12(f) allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Rule 7(a) specifies that only a complaint, an answer to a complaint, an answer to a counterclaim designated as a counterclaim, an answer to a crossclaim, a third-party complaint, an answer to a third-party complaint, and a reply to an answer qualify as pleadings and states that "[o]nly these pleadings are allowed." Thus, Plaintiff's sur-reply is not a pleading, *id.*, and the Court may not strike it. *See Fox v. Michigan State Police Dep't*, 173 F. App'x 372, 375 (6th Cir. 2006).

As set forth above, the claims from Plaintiff's amended complaint that are proceeding against Centurion are that this defendant (1) has refused to order a prescribed drink, specifically "Two Cal," for him; and (2) a policy of Centurion caused Dr. Meydrech to respond in a deliberately indifferent and/or negligent manner to Plaintiff's dental care needs and Plaintiff to not receive needed eye care. In support of these claims, Plaintiff states that a radiologist in Nashville told him that Ensure was entering his windpipe and increasing his risk for pneumonia but Centurion refuses to order the "Two Cal" drink Dr. Samuels and Centurion dietitians prescribed for him due to its cost [Doc. 11, p. 16 n.22]. Plaintiff also claims that Centurion's chief executive officer ("CEO") made a directive under which medical personnel cannot refer Plaintiff or other inmates to the dentist or for eye care, even though there is only one dentist for 3,000 or more inmates, and that this directive prevents him from seeing an optometrist for his eye issues, although he has had "multiple trips to [DNSF], [] [and] several x-rays and scans of" the problematic portion of his eye [*Id.* at 16]. Plaintiff additionally asserts that Dr. Meydrech, a Bledsoe County Correctional Complex dentist, who is an employee of Centurion, denied him dental and/or oral care for 18 months, specifically stating that Dr. Meydrech put him on a list for extraction when three of his teeth broke, even though one of those teeth broke in a way that exposed a nerve and Dr. Meydrech knew that Plaintiff did not have teeth on the opposite side of his mouth [*Id.* at 10–11].

Centurion mainly asserts that Plaintiff's allegations in his amended complaint underlying the claims proceeding against it are conclusory and unsupported by facts to

support a plausible inference that its custom or policy caused a violation of Plaintiff's constitutional rights [Doc. 28, pp. 4–5]. Centurion also asserts that Plaintiff's claims regarding his failure to receive Ensure and eye care from an optometrist fail to state a claim against it, as Plaintiff acknowledges his receipt of other medical care for these issues [*Id.* at 5–6]. Additionally, Centurion asserts that Plaintiff failed to comply with the Tennessee Health Care Liability Act ("THCLA") with regard to any medical malpractice claims that are proceeding against it [*Id.* at 7–9]. In its reply brief, Centurion raises at least one new argument to support its motion to dismiss Plaintiff's claims against it, namely that Plaintiff's claims are time-barred [Doc. 34, p. 4]. However, the Court again finds that arguments raised for the first time in a reply are waived, *Scottsdale,* 513 F.3d at 553, and the Court therefore does not consider any new arguments in Centurion's reply.

First, the Court agrees with Centurion that Plaintiff's amended complaint claim against Centurion arising out of the failure to purchase the "Two Cal" supplement due to cost, as Plaintiff provides no facts to plausibly support this statement in his amended complaint. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Accordingly, this claim against Centurion is **DISMISSED**.

Additionally, the Court agrees with Centurion that Plaintiff's allegation that he cannot see an optometrist based on a directive regarding optical care entered by Centurion's CEO fail to rise to the level of a constitutional violation, as Plaintiff acknowledges in his amended complaint that he received various other forms of medical care for his underlying

18

eye issue. *See, e.g., Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976))). Accordingly, this claim against Centurion is **DISMISSED**.

However, liberally construing the amended complaint in Plaintiff's favor, Plaintiff plausibly alleges that Dr. Meydrech's failure to provide him dental care was due to Centurion's policy, as set forth in a directive. Accordingly, this claim will proceed.

As to Centurion's assertion that the Court should dismiss any medical malpractice claims against it due to Plaintiff's alleged failure to fully comply with the THCLA notice requirements, the THCLA does not apply to medical malpractice claims brought in this Court. *See Albright v. Christensen*, 24 F.4th 1039 (6th Cir. 2022) (holding that the certification requirements of Michigan law [which are substantially similar to Tennessee's] do not apply to a medical malpractice suit in federal court); *Smith v. CoreCivic, Inc.*, 618 F. Supp. 3d 695, 700–06 (M.D. Tenn. 2022) ("[I]t is clear that the presuit notice requirement set forth in Tenn. Code Ann. § 29-26-121(a)(1) and the certificate of good faith requirement in Tenn. Code Ann. § 29-26-122(a) conflict with the Federal Rules of Civil Procedure. As such, they must give way to the Federal Rules and, therefore, do not apply to health care liability claims filed in federal court."); *Galaz v. Warren Cnty.,*

19

*Tennessee*, No. 4:22-CV-50-, 2023 WL 2801178, at *3 (E.D. Tenn. Apr. 5, 2023) (citing *Albright* and *Smith*). Thus, this argument has no merit.

Moreover, while Centurion cites a case in which a district court declined to exercise supplemental jurisdiction over a state law medical malpractice claim against a defendant after granting summary judgment to that defendant, a decision for which the district court cited a case in which the Sixth Circuit remanded a medical malpractice claim but noted that the district court might decline to exercise supplemental jurisdiction over that claim because it had granted summary judgment in favor of the medical defendants, *see Davis v. Anderson*, No. 3:20-CV-250, 2021 WL 5743745, at *8 (N.D. Ohio Dec. 2, 2021) (citing *Kitchen v. Snyder*, No. 20-1936, 2021 WL 4470032, at *5 (6th Cir.)), this case is in a very different procedural posture than both of those cases, especially as an Eighth Amendment claim is still proceeding against Centurion. As such, this argument also lacks merit.

Accordingly, Centurion's arguments for dismissal of all medical malpractice claims against it are unpersuasive, and the Court will not further address them.

## V.    CONCLUSION

For the reasons set forth above:

1.    Plaintiff's motion for the Court to reconsider its dismissal of Aramark [Doc. 21] is **DENIED**;

2.    Plaintiff's motion for a TRO [Doc. 23] is **DENIED**;

3.    Centurion's motion to dismiss the claims against it [Doc. 27] is **GRANTED in part** as to Plaintiff's claims regarding this defendant not ordering the "Two Cal" supplement and the failure to allow Plaintiff to see an optometrist, and **DENIED in part** as to Plaintiff's claim regarding denial of dental care;

4. Centurion's motion to strike Plaintiff's sur-reply to its motion to dismiss [Doc. 39] is **DENIED**;

5. Plaintiff's motions regarding service of process [Docs. 37, 43, 47] are **GRANTED in part** only to the extent that the Clerk is **DIRECTED** to send a copy of this memorandum and order and the amended complaint [Doc. 11] to the Attorney General for the State of Tennessee, who is **ORDERED** to provide the Court with any information to which he has access that may help the United States Marshals Service effectuate service on Dr. Rich, Dr. Meydrech, Sarrell, and Majors. The Attorney General should file this information under seal with the Court within fifteen (15) days after entry of this memorandum and order. Upon receipt of this information from the Attorney General, the Clerk is **DIRECTED** to sign and seal summonses for these defendants and to forward those summonses to the United States Marshals Service for service of process. Fed. R. Civ. P. 4;

6. Plaintiff's motions for default judgment [Docs. 44, 45] and motion for a hearing regarding default judgment [Doc. 46] are **DENIED**; and

7. Plaintiff is **ORDERED** to immediately inform the Court and defendants or their counsel of record of any address changes in writing. Pursuant to Local Rule 83.13, it is the duty of a pro se party to promptly notify the Clerk and the other parties to the proceedings of any change in his or her address, to monitor the progress of the case, and to prosecute or defend the action diligently. E.D. Tenn. L.R. 83.13. Failure to provide a correct address to this Court within fourteen (14) days of any change in address may result in the dismissal of this action.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE

21